UNITED STATES of America, Plaintiff–Appellee,

v.

Darren Dewayne McDUFFY, Defendant–Appellant.

No. 95–2839.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1996.

Decided July 22, 1996.

Victoria Ursulskis, Major R. Coleman (argued), Office of the United States Attorney, Indianapolis, IN, for plaintiff–appellee.

Linda M. Wagoner and Steven J. Riggs (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for defendant–appellant.

Before BAUER, ROVNER and DIANE P. WOOD, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

On March 24, 1989, police officers executed a search warrant in the home of Ray Monhollen. There they found evidence that helped to support a nine-count indictment against Monhollen and three others for conspiracy to commit various drug offenses and related charges. Among those named in the indictment was Darren Dewayne McDuffy, who had had the misfortune of calling Monhollen's home telephone during the search to arrange for the pickup of marijuana that he had previously ordered. The searching officers took his call and, even more obligingly, arranged for the pickup. When McDuffy arrived with Eric Hart, another of the alleged conspirators, an undercover officer brought out a garbage bag containing marijuana. After briefly inspecting the drug, McDuffy instructed the officer to place the bag in the trunk of Hart's car. The officer did so and then arrested both McDuffy and Hart.

Based on this evidence, McDuffy was charged with conspiracy to possess with intent to distribute marijuana, possession with intent to distribute marijuana, use of a telephone in furtherance of those crimes, and, because Eric Hart was less than 21 years of age, distribution of marijuana to a minor. McDuffy pled guilty to all four charges. Although McDuffy's sole involvement with the conspiracy was this single marijuana purchase, the district court relied on the full amount of marijuana distributed by the conspiracy, 40 to 50 kilograms, in determining McDuffy's sentence. This drug quantity resulted in a base offense level of 20. The district court then treated the telephone and distribution to a minor charges as separate groups (section 3D1.2), which led to a two-level enhancement under section 3D1.4. With a two-level reduction for acceptance of responsibility, McDuffy's final offense level was 20. Placed in criminal history category III, McDuffy's resulting sentencing range was 41–51 months. The district court sentenced McDuffy toward the top of that range to 48 months of incarceration.

On appeal, McDuffy argues that he should have been sentenced based only on the amount of marijuana that he purchased from Monhollen, which he calculates at 2.5 to 5 kilograms and which would have resulted in a significantly lower offense level. Because the district court's determination of drug amount is one of fact, we review it for clear error. *United States v. Plescia*, 48 F.3d 1452, 1458 (7th Cir.), *cert. denied*, —— U.S.

——, ——-——, 116 S.Ct. 114, 329, 556, 133 L.Ed.2d 66, 230, 457 (1995); *United States v. Jean,* 25 F.3d 588, 598 (7th Cir.1994). McDuffy also argues that the district court erred in failing to group all four counts of his conviction under Guidelines section 3D1.2. This involves a question of Guidelines interpretation, and so is subject to *de novo* review. *United States v. Owolabi,* 69 F.3d 156, 162 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 959, 133 L.Ed.2d 882 (1996); *United States v. Bruder,* 945 F.2d 167, 169 (7th Cir.1991) (en banc).[1]

## I. Drug Quantity

The "Relevant Conduct" guideline, which establishes liability for the acts of coconspirators, has evolved significantly since the early Guidelines versions. The portion of the guideline under which McDuffy was sentenced in 1989 provided:

> [T]he base offense level ... shall be determined on the basis of ... all acts and omissions *committed or aided and abetted by the defendant,* or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

U.S.S.G. § 1B1.3(a)(1) (1989). The application note to that guideline explained that "[i]n the case of ... a conspiracy ... the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3 App. Note 1 (1989). This language was incorporated into the guideline itself in a 1992 amendment, so that section 1B1.3(a)(1)(B) now directs that defendants convicted of conspiracy be sentenced based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." When enacting this amendment, the Sentencing Commission explained that:

> This amendment clarifies and more fully illustrates the operation of this guideline. Material is moved from the commentary to the guideline itself and rephrased for greater clarity....

U.S.S.G. Appendix C, Amendment 439. Thus, although not yet incorporated into the guideline itself in 1989, the same two conditions that currently control its application were operative at that time. In order to be sentenced for the conduct of one's coconspirators, that conduct must be both "reasonably foreseeable" and in furtherance of "jointly undertaken criminal activity." *See also, United States v. Edwards,* 945 F.2d 1387, 1391–92 (7th Cir.1991), *cert. denied,* 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992).

Focusing solely on the question of reasonable foreseeability, the district court justified McDuffy's liability for the conduct of his coconspirators in this way:

> It is certainly reasonably foreseeable from McDuffy's perspective as a knowledgeable purchaser of this drug that the acquisition of ten pounds of marijuana would involve a connection to a greater quantity of the

1. McDuffy was originally sentenced on November 7, 1989, but first contested his sentence on April 1, 1994 by way of a motion filed under 28 U.S.C. § 2255. McDuffy explained that he had not filed a direct appeal because he had not been advised of his right to do so. After an evidentiary hearing on that question, the district court agreed with McDuffy and granted his section 2255 motion. As a remedy (which has not been challenged), the court reentered the criminal judgment on July 24, 1995, so that McDuffy would be able to pursue a direct appeal. Although McDuffy's sentence therefore was entered in 1995, the district court did nothing substantive at that time. The original presentence report, sentencing hearing, and sentencing memorandum still stand as the basis for McDuffy's sentence. We will therefore review his sentence under the Guidelines that were in effect on the date that he was originally sentenced in 1989. As discussed below, it appears that the district court may actually have relied on the 1988 Guidelines in sentencing McDuffy, although we have no indication that this was necessitated by any ex post facto considerations. *See United States v. Shorter,* 54 F.3d 1248, 1261–62 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995) (the guidelines in effect on the date of sentencing apply except when to do so results in a harsher sentence); *United States v. Brassell,* 49 F.3d 274, 277 (7th Cir. 1995). Our analysis will rely on the 1989 Guidelines Manual.

illegal substance than just 10 pounds. It is equally foreseeable that the amount involved in supply from which the 10 pounds would be cut would [be] as large as 94 pounds. This case does not connect the defendant with a distant boat, plane or warehouse of the substance, containing massive amounts beyond even the wildest imagination of the common street dealer. The 94 pound amount for which McDuffy is vicariously accountable is well within the reasonable limits of what he should have expected it would take for Wells to satisfy his order.

(Dec. 22, 1989 Mem. at 9.)

■ But reasonable foreseeability is not by itself sufficient to establish liability for the acts of coconspirators. To be considered as relevant conduct, such acts also must be in furtherance of "jointly undertaken criminal activity." In other words, a defendant does not become liable in sentencing for the acts of coconspirators if those acts did not advance an objective within the scope of the conspiracy that he joined. *See Edwards*, 945 F.2d at 1392–93. Here, the evidence showed that McDuffy was involved with Monhollen's

conspiracy only during the course of the single purchase for which he was arrested. There was no evidence suggesting that the "conspiracy" that McDuffy joined extended any further.[2] In the absence of *any* evidence of additional "jointly undertaken criminal activity," the district court's decision to sentence McDuffy based on the full amount of marijuana associated with Monhollen's more far reaching conspiracy was clearly erroneous.[3]

## II. Grouping

■ Guidelines section 3D1.2 requires the grouping of offenses that "involve substantially the same harm." Here, the district court determined that the charges of using a communications facility and distributing to a minor involved harms separate from those caused by the possession and conspiracy offenses. The decision not to group these counts together increased McDuffy's offense level by two, in accordance with the rules set out in Guidelines section 3D1.4.[4] McDuffy argues that all four of the counts, which stemmed from a single transaction, involved

2. It is not clear that the link between McDuffy and Monhollen actually amounted to anything more than a simple buyer-seller relationship. Of course, McDuffy pled guilty, and the question of whether the evidence supports a conspiracy conviction is not before us. Fortunately, the issue is not ultimately consequential in terms of McDuffy's sentence. Any possible harm is alleviated so long as his sentence is limited to drug quantities that actually were involved in his "jointly undertaken criminal activity."

3. Example 4 of the current application notes to section 1B1.3, which describes a comparable situation, buttresses this conclusion:

> Defendant K is a wholesale distributor of child pornography. Defendant L is a retail-level dealer who purchases child pornography from Defendant K and resells it, but otherwise operates independently of Defendant K. Similarly Defendant M is a retail-level dealer who purchases child pornography from Defendant K and resells it, but otherwise operates independently of Defendant K. Defendants L and M are aware of each other's criminal activity but operate independently.... Each defendant is convicted of a count charging conspiracy to distribute child pornography. Defendant K is accountable ... for the entire quantity of child pornography sold to Defendants L and M.... Defendant L is accountable ... only for the quantity of child pornography that he pur-

chased from Defendant K because the scope of his jointly undertaken criminal activity is limited to that amount. For the same reason, Defendant M is accountable ... only for the quantity of child pornography that he purchased from Defendant K.

U.S.S.G. § 1B1.3 App. Note 2(c)(4). This example was included only as part of the 1992 amendment to section 1B1.3. It is nonetheless relevant because it explicates the same language that was operative in 1989 by way of Application Note 1, and because of the Sentencing Commission's indication that the 1992 amendments were intended only to "clarify and more fully illustrate" the existing guideline.

4. The district judge relied on Guidelines section 2D1.3 in assigning an offense level of 14 for the count charging distribution to a minor, although section 2D1.3 was actually superseded by section 2D1.2 as of November 1, 1989. Because McDuffy was sentenced after that date, he should have been sentenced under the newer guideline, section 2D1.2. Unlike section 2D1.3, section 2D1.2 does not direct that the drug quantity be doubled in determining the offense level for charges of distribution to a minor and, for this reason, would most likely have produced a lower offense level on this count. The district court should apply the appropriate methodology on resentencing.

substantially the same harm and should have been grouped together. We agree.[5]

As for the charge of distributing marijuana to a minor, the guideline itself settles the question. Section 3D1.2(d) provides that counts should be grouped together when "the offense level is determined largely on the basis of ... the quantity of a substance involved...." Here, drug quantities are operative in sentencing for the charges of conspiracy, possession, and distribution to a minor. Indeed, the guideline explicitly provides that offenses covered by section 2D1.2, which applies to distribution to a minor, be grouped together with those covered by section 2D1.1, which applies to the conspiracy and possession charges. U.S.S.G. § 3D1.2(d). The district court therefore erred in not grouping these counts together.

The question of whether the communications charges should also have been grouped with the others is not explicitly answered by the guideline, but is nonetheless fairly straightforward. Section 3D1.2(a) provides that counts involve "substantially the same harm," and should therefore be grouped, when they "involve the same victim and the same act or transaction." For "victimless" crimes, defined as those for which society as a whole rather than a particular individual is harmed, the grouping determination is based on "the nature of the interest invaded by each offense." U.S.S.G. § 3D1.2 App. Note 2, *see also Owolabi,* 69 F.3d at 165–167; *Bruder,* 945 F.2d at 170–171. Here, the district court concluded that the communications charge involved a separate harm based on the fact that "Congress has decided to specifically identify this harm and punish its violation." (Dec. 22, 1989 Mem. at 12.) But that fact certainly cannot be the basis for a grouping determination, as the guideline obviously envisions the grouping even of offenses charged under different statutes. Indeed, the commentary explicitly states that:

> counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite

harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times.

U.S.S.G. § 3D1.2, App. Note 4.

The Introductory Commentary to Part 3D explains the purpose of the grouping rules as "seek[ing] to provide incremental punishment for significant additional criminal conduct." U.S.S.G. Part 3D Introductory Commentary. "Significant additional" conduct is defined in the negative; it does not include offenses that are "closely intertwined with other offenses" or "closely related to [a] more serious offense." *Id., see also, Bruder,* 945 F.2d at 171. Examples of such related offenses are "embezzling money from a bank and falsifying the related records," and "assault causing bodily injury to a teller during a bank robbery." U.S.S.G. Part 3D Introductory Commentary; *see also* U.S.S.G. § 3D1.2, App. Note 3, 4, 6. By contrast, the application notes illustrate charges that ought not to be grouped by reference to offenses that are clearly distinct, such as crimes committed on two different days. *See, e.g.,* U.S.S.G. § 3D1.2, App. Note 3, 4, 6. In view of this commentary, it seems clear that the use of a communications facility to arrange for a pickup of marijuana should be grouped with the other charges that arose from that pickup. The offenses flowed from a single transaction and involved a unitary harm. As we noted in *Bruder,* if the communications charge is not grouped, "[McDuffy's] one act of criminal conduct ... would give rise to punishment for two offenses, despite the guidelines' stated goal of seeking incremental punishment only for 'significant additional criminal *conduct.'*" 945 F.2d at 171 n. 3 (emphasis in original).

Indeed, Guidelines section 2D1.6, which established a base offense level of 12 for the use of a communications facility during the commission of a drug offense at the time of McDuffy's sentencing, was amended the following year. It now provides as a base offense level "the offense level applicable to

---

**5.** The government argues on appeal that McDuffy waived the grouping question by failing to raise it before the district court. This suggestion is belied by footnote 2 of the district court's sen-

tencing memorandum, which indicates that McDuffy had indeed raised this argument below. (*See* Dec. 22, 1989 Mem. at 12 n. 2.)

the underlying offense." This amendment, meant to incorporate drug quantities into sentencing for communications charges (U.S.S.G. Appendix C Amendment 320), makes the offense one that today would be grouped with the other charges under section 3D1.2(d), which calls for the grouping of all offenses that are sentenced on the basis of drug amounts. In making the relatedness explicit, the amendment, although not dispositive here, supports the conclusion that grouping was appropriate even before its enactment.

### III. Conclusion

The district court's calculation of the drug quantity was clearly erroneous and its failure to group all of the charges involved an incorrect application of the Guidelines. On remand, McDuffy's sentence should be based only on the drug amount involved in his isolated purchase from Monhollen, as that is the full extent of his jointly undertaken criminal activity. The charges for distribution to a minor and for the use of a communications facility should be grouped with those for conspiracy to possess and possession of marijuana.

VACATED and REMANDED.