**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Willie EDWARDS, Defendant–Appellant.**

No. 96–2467.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1997.

Decided June 16, 1997.

Andrew B. Baker, Jr., Daniel L. Bella (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff-Appellee.

Rochelle S. Meyers (argued), South Bend, IN, for Defendant-Appellant.

Before BAUER, WOOD, Jr., and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Willie Edwards ("Willie"),[1] Appellant, was convicted before a jury of one count of conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 846 and one count of use of a communication facility to facilitate the commission of a drug trafficking felony in violation of 21 U.S.C. § 843(b)(2). The district court sentenced Willie to 324 months of imprisonment on the conspiracy count and 96 months on the use of a communication facility count, to be served concurrently. On appeal, Willie raises several issues. He argues that the trial court incorrectly determined that he was accountable for 47 kilos of heroin, the quantity of narcotics attributable to the entire conspiracy, holding that this amount was foreseeable to him, pursuant to U.S.S.G. § 1B1.3. Willie further contends that this conclusion was improper for the sentencing judge initially failed to make a finding as to the scope of criminal activity jointly undertaken by him. Secondly, the Appellant argues that the court erred in its factual determination that he was involved in every part of the drug trafficking organization. Lastly, he maintains that the trial judge erred in ruling that his participation in the conspiracy began prior to February 1989, while he was still on probation for a state criminal conviction. We affirm.

## I. FACTUAL BACKGROUND

Willie was involved in his uncle's, Lee Edwards's ("Lee"), drug trafficking organization in Gary, Indiana, from at least February

---

1. The Appellant pursues this appeal under the name Willie Edwards, however, his name also appears as Willie Edwards, Jr., in his brief and parts of the record.

1988, until at least the end of September 1990. The drug conspiracy dealt primarily in the sale of heroin and cocaine. Drugs were sold from several locations owned by Lee, which included an apartment building, a liquor store known as the Black Horseman, as well as the two residences where Lee and his wife, Lorri Edwards ("Lorri"), resided. The drugs were also sold at locations arranged over the phone. A buyer would call one of the residences and place an order, or be directed to one of the homes of Lee's independent contractors.

At trial, Lorri testified that Willie began selling drugs for his uncle, Lee, within less than a year of his release from prison on February 24, 1987. Willie had been incarcerated as a result of an Indiana state conviction for selling .341 grams of heroin to an undercover police officer. According to Lorri's testimony, on occasion, Willie would help package small quantities of the drugs to be sold. By October 1990, Willie was living with Lee most of the time and they would move back and forth between Lee's two residences in order that they might shift the drug operation's headquarters to avoid easy detection. While at the residences, Willie's duties included answering the phone, taking drug orders, and delivering drugs to customers. Additionally, Vincent Balboa, a special agent with the Drug Enforcement Administration ("DEA"), testified that Willie was one of several individuals who periodically traveled to Chicago to pick up heroin from one of Lee's suppliers.

On October 11, 1990, a several month investigation conducted by the Federal Bureau of Investigation ("FBI") culminated with the execution of a search warrant at one of Lee's Gary, Indiana residences. At the time of the search a narcotics record book was seized which included a reference to Willie receiving 172 $10 bags of white heroin, brown heroin, and cocaine on March 7, 1990. Lee, testifying at his own trial, stated that Willie also referred some of the drug buyers to the independent contractors who would in turn sell drugs for him.

In *United States v. Edwards*, No. 92 CR 113 (N.D.Ind. Sept. 22, 1994) (the trial involving Lee Edwards) the trial court found that Lee was the kingpin of the conspiracy and that the over all conspiracy involved the sale and transfer of some 47 kilos of heroin, we affirmed that decision in *United States v. Edwards*, 77 F.3d 968 (7th Cir.), *vacated and remanded for resentencing on other grounds*, —— U.S. ——, 116 S.Ct. 2543, 135 L.Ed.2d 1064 (1996). The quantity established at Lee's trial covered the period from approximately February 1988, until the end of September 1990, which also happened to be the period of time that the trial court concluded that Willie was actively involved in the conspiracy. Willie, Lee's nephew, does not challenge the court's 47 kilo calculation of the amount of drugs that the conspiracy dealt during this period, but rather argues that it was improper for the court to hold him accountable for that amount.

## II. DISCUSSION

### A. *Relevant Conduct and U.S.S.G. § 1B1.3*

■■■ Willie argues that the district court erred in finding that under relevant conduct he should be held accountable for 47 kilos of heroin, the entire quantity of drugs attributable to the conspiracy. A district court's determination of the quantity of drugs included as relevant conduct is a finding of fact that we review for clear error. *United States v. House*, 110 F.3d 1281, 1283 (7th Cir.1997); *United States v. Windom*, 82 F.3d 742, 746 (7th Cir.1996). "This court should not find that a finding of fact is clearly erroneous unless upon review it is left 'with a definite and firm conviction that a mistake has been committed.'" *United States v. Herrera*, 54 F.3d 348, 356 (7th Cir.) (quoting *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989)), *cert. denied sub nom. Crespo v. United States*, —— U.S. ——, 116 S.Ct. 192, 133 L.Ed.2d 128 (1995); *House*, 110 F.3d at 1283–84. "'[I]f two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous.'" *United States v. Taylor*, 72 F.3d 533, 546 (7th Cir. 1995) (quoting *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir.1994)). However, interpretations of a Sentencing Guideline are questions of law, which receive a *de novo* review. *United States v. McDuffy*, 90 F.3d

233, 235 (7th Cir.1996); *United States v. Marquez,* 48 F.3d 243, 246 (7th Cir.1995).

█ Willie, a two-time drug loser, first state now federal, states that the trial judge determined that he was involved in every aspect of the organization during his two and a half year involvement and that the 47 kilos amount of drugs attributable to the conspiracy was also foreseeable to him. However, he asserts that the district court failed to recite that it made a specific finding as to whether the entire conspiracy was a "jointly undertaken criminal activity." Thus, Willie argues that the court failed to make a finding as to the scope of his agreement to participate in the conspiracy, as required by U.S.S.G. § 1B1.3(a)(1)(B).

Section 1B1.3(a)(1)(B) explains what can be considered as relevant conduct in determining a defendant's base offense level. Section 1B1.3(a)(1) states that relevant conduct is "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

Willie argues that he was a heroin addict with little control over his addiction, and that his relationship with his uncle, Lee, was merely one of addict and supplier. He further asserts that rather than his involvement in the conspiracy encompassing the entire amount of heroin, it only went so far as for him to do whatever his uncle required of him in order that he might obtain that quantity of heroin sufficient to satisfy his personal habit. On the other hand, the Government contends that the district court's findings were clearly sufficient regarding Willie's participation in the conspiracy, his scope of agreement to participate, and the foreseeability to him of the quantity of narcotics dealt by the conspiracy. Thus, the Government asserts that the trial judge's determination to hold Willie accountable for 47 kilos of heroin was more than adequately supported by the evidence.

█ In sentencing, pursuant to U.S.S.G. § 1B1.3(a)(1)(B), the court is required to take into account not only the acts of the defendant charged in the conspiracy, but also "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); *House,* 110 F.3d at 1284–85; *United States v. Lampkins,* 47 F.3d 175, 180 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1440, 131 L.Ed.2d 319, *and cert. denied sub nom. Reed v. United States,* 514 U.S. 1089, 115 S.Ct. 1810, 131 L.Ed.2d 734 (1995); *United States v. Zarnes,* 33 F.3d 1454, 1474 (7th Cir.1994), *cert. denied sub nom. Bland v. United States,* —— U.S. ——, 115 S.Ct. 2286, 132 L.Ed.2d 288 (1995). At sentencing, "[t]he [G]overnment must establish by a preponderance of the evidence the quantity of drugs that was reasonably foreseeable to each particular defendant." *United States v. McKinney,* 98 F.3d 974, 980 (7th Cir.1996) (citation omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 1119, 137 L.Ed.2d 319 (1997). In determining the appropriate amount of drugs under relevant conduct for sentencing purposes, the rules of evidence do not apply and the sentencing judge is free to consider a wide range of evidence including hearsay. *Windom,* 82 F.3d at 746. Because a defendant has a right to be sentenced on reliable information, contested hearsay must be reliable and the defendant must be provided with a reasonable opportunity to rebut contested hearsay. *Id.*

> While it is true that a criminal defendant has a due process right to be sentenced on the basis of reliable information, it is well established that the evidentiary standards that apply to sentencing are not as stringent as those applicable in a criminal trial. The Criminal Code provides that:

>> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

> When sentencing a defendant, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. So long as the information which the sentencing

judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence. Provided that the facts contained in a PSR bear sufficient indicia of reliability to support their probable accuracy, the district court may adopt them as support for its findings and conclusions regarding the quantity of drugs attributable to a defendant.

*Taylor,* 72 F.3d at 543 (citations and quotations omitted); *see United States v. Messino,* 55 F.3d 1241, 1254 (7th Cir.1995).

Pursuant to Federal Rule of Appellate Procedure 28(j), Willie cited *United States v. McDuffy,* 90 F.3d 233 (7th Cir.1996), as supplemental authority. At oral argument his counsel also relied extensively on this case. *McDuffy* involved a sentencing appeal which arose out of the defendant's conviction on drug conspiracy and possession charges. In *McDuffy,* we reversed, as clearly erroneous, a relevant conduct enhancement pursuant to U.S.S.G. § 1B1.3. The sentencing court had determined that McDuffy should be held responsible for the entire 40–50 kilograms of marijuana distributed by the drug conspiracy because this amount was reasonably foreseeable to the defendant. We reversed, holding that there was insufficient evidence of jointly undertaken criminal activity to hold the defendant responsible for all of the conspiracy's drug trafficking. U.S.S.G. § 1B1.3(a)(1)(B). We noted that the defendant had purchased only between 2.5 and 5 kilograms of marijuana from an individual named Monhollen, and stated "it is not clear that the link between McDuffy and Monhollen actually amounted to anything more than a simple buyer-seller relationship." *McDuffy,* 90 F.3d at 236 n. 2. In *McDuffy,* we stated that,

> But reasonable foreseeability is not by itself sufficient to establish liability for the acts of coconspirators. To be considered as relevant conduct, such acts also must be in furtherance of "jointly undertaken criminal activity." In other words, a defendant does not become liable in sentencing for the acts of coconspirators if those acts did not advance an objective within the scope of the conspiracy that he joined.

*Id.* at 236 (citation omitted). Willie also relies on *United States v. Gutierrez–Hernandez,* 94 F.3d 582, 585 (9th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997), and *United States v. Hernandez–Santiago,* 92 F.3d 97, 100 (2d Cir.1996), for this same legal standard.

The present case is distinguishable from *McDuffy,* because unlike McDuffy, Willie's actual participation (answering telephone, taking drug orders and referring buyers to the independent contractors, delivering and selling drugs, as well as occasionally picking up drug shipments and preparing packages for sale) in Lee's drug trafficking conspiracy went well beyond that of a simple buyer-seller relationship. The full activities of the drug conspiracy were not only reasonably foreseeable to Willie, but were also performed in furtherance of the jointly undertaken criminal activity and advanced an objective within the scope of the conspiracy that he joined.

A reading of Application Note 2 to § 1B1.3 is useful in further understanding how relevant conduct is to be determined for a defendant. This application note states that,

> Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (*i.e.,* the scope of the specific conduct and objectives embraced by the defendant's agreement).

U.S.S.G. § 1B1.3, comment. (n.2). The application note goes on to explain that in order to be held accountable for the conduct of others, that conduct must have been both in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity. *Id.; see Taylor,* 72 F.3d at 541. In sentencing, the trial

judge must make an individualized inquiry, "setting forth the reasons why the particular amount of drugs was reasonably foreseeable to him, with reference to the evidence before the court." *United States v. Edwards,* 945 F.2d 1387, 1399 (7th Cir.1991), *cert. denied sub nom. Martin v. United States,* 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 *and cert. denied sub nom. Hampton v. United States,* 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992).

We are convinced that in the case before us the sentencing judge made the requisite inquiry into the scope of the criminal activity jointly undertaken by Willie and the foreseeability of the quantity of narcotics to him. The court stated on the record that it had reviewed all of the testimony, exhibits, arguments of counsel, and had considered the credibility of the witnesses. The district court stated:

> The Court finds that the defendant was involved in a conspiracy less than one year after his release from prison, which was indicated in the Presentence Report and agreed to by the parties to be February 24th, 1987. Therefore, the defendant was involved in the Lee Edwards trafficking organization from at least 2–24–88, and at least until September 1990, when there was also a phone conversation that was taped.

> The court finds that the defendant was not a leader but was very heavily involved at every phase of the Lee Edwards drug trafficking organization; that the defendant picked up drugs from sources of supply to Mr. Lee Edwards and knew when key deliveries were made.

(Sentencing Hr'g Tr. of May 28, 1996 at 5.) The court went on to say,

> Therefore, the Court finds by a preponderance of the evidence that the defendant was a knowledgeable coconspirator with respect to the scope of activities.

> The defendant was involved in every part of the organization during his two-and-a-half year involvement, and the amount of drugs distributed by the organi-

zation was foreseeable by the defendant and, therefore, he is accountable for the total amount of drugs.

(*Id.* at 7.) Therefore, the sentencing court did not blindly announce it's conclusion, but explained its reasoning with specific references to the evidence. *Edwards,* 945 F.2d at 1399. As we have ruled, the sentencing court's specific findings were more than adequate. Thus, the court did not commit error when it determined that Willie was accountable for the entire quantity of narcotics involved in the conspiracy (47 kilos).

### B. *Willie Edwards's Involvement in Every Part of the Organization*

 Willie next contends that the record fails to support the district court's determination that he was involved in every part of the organization beginning in February 1988, and lasting for a two and a half year period, up until at least September 20, 1990. We also review this factual determination of the sentencing court for clear error. *House,* 110 F.3d at 1283. In order to find that the district court committed clear error in making this factual finding we must, once again, be "left with the definite and firm conviction that a mistake has been committed." *Herrera,* 54 F.3d at 356 (internal quotation omitted).

 At sentencing the trial judge found that Willie was "very heavily involved at every phase" of the conspiracy from February 1988, until September 20, 1990, at which time an FBI wiretap recorded a phone conversation of Willie's that proved he was still involved in the conspiracy.[2] As the trial court found that Willie was involved in every phase of the organization during this period, it properly concluded that he was accountable for the total amount of drugs the conspiracy dealt during that time, 47 kilos. Willie argues that this finding completely overlooks the testimony that Lorri gave in court as the chief witness against Willie. In support of this contention Willie first states that Lorri testified that he was not involved in the mixing or the cutting of the heroin. He also

---

**2.** The drug trafficking organization ceased operating as a result of the FBI's investigation and execution of a search warrant in October 1990.

may not have been involved in sweeping the floors or turning out the lights, but this alone would also not be sufficient to prove that he was not "involved at every phase of the ... drug trafficking organization." (Sentencing Hr'g Tr. of May 28, 1996 at 5.) He additionally points out that Lorri testified that Willie was only seldomly involved in packaging drugs. Willie also argues that he was not involved in the conspiracy any more than any of the other workers whom Lee controlled and that the reason he was frequently at Lee's house was due to his familial relationship and addiction to heroin. He asserts that he never agreed to be part of the greater conspiracy and that Lee did not trust him to sell drugs because of his addiction.

We have previously stated:

> Once a conspiracy is shown to exist evidence that establishes a particular defendant's participation beyond a reasonable doubt, although the connection between defendant and conspiracy is slight, is sufficient to convict. The [G]overnment may establish a defendant's knowing participation in a single conspiracy by offering evidence that: [t]he parties to the agreement were aware that others were participating in the scheme. The coconspirators must have knowingly embraced a common criminal objective.... However, there is no requirement that the participants in the plan personally know the individuals involved ... [a]s long as the conspiracy continues and its goal is to achieve a common objective.

*United States v. Briscoe*, 896 F.2d 1476, 1505 (7th Cir.1990).

3. The record book which Lee's organization used to record how many packets of drugs each of his workers took to sell was seized by officers at the time of the execution of the search warrant. One entry in that book dated March 7, 1990, indicated that Willie was responsible for 100 $10 bags of white heroin, 30 $10 bags of brown heroin, and 42 $10 bags of cocaine. Willie, like other sellers, would keep $2 from each $10 bag sold, and give the remaining $8 back to Lee.

4. Telephone conversations recorded pursuant to the court ordered wire tap on Lee's residences established that Willie was actively involved in taking orders for narcotics over the phone and then personally meeting the drug purchasers at a

Despite Willie's arguments, after reviewing the evidence in its totality we are not left with a definite and firm conviction that the sentencing court committed a mistake. The activities in which Willie, the two-time loser, engaged in furtherance of the conspiracy, the length of time that he participated in the conspiracy, and the knowledge that he had about the scope of the conspiracy, all support the district court's determination that he was involved in every phase of the conspiracy. The evidence and testimony presented before the court clearly demonstrate that Willie: occasionally picked up supplies of heroin for Lee; sold significant amounts of narcotics at an apartment owned by Lee;[3] alternated living at each of Lee's two houses depending on where Lee was currently operating the drug trafficking organization; answered phone calls at these houses and made arrangements with the callers for them to purchase drugs from him at specific locations;[4] knew when large shipments of narcotics had been obtained and informed callers of this information; informed drug purchasers of independent contractors that the callers could also purchase drugs from;[5] and, occasionally helped package small quantities of the drugs to be sold.

■■■■ Furthermore, " '[i]t is not the task of this appellate court to reconsider the evidence or assess the credibility of the witnesses.' " *United States v. Hickok*, 77 F.3d 992, 1006 (7th Cir.) (quoting *United States v. Mojica*, 984 F.2d 1426, 1435 (7th Cir.1993)), *cert. denied*, —— U.S. ——, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). "The sentencing judge's factual determination that [the defendant] was part of the larger conspiracy and responsible [for the entire amount] ...

specified location to complete the sale. At trial, Lorri identified Willie's voice in these phone conversations and the tapes were admitted into evidence.

5. Two wire tap recorded phone conversations involved Willie referring to two individuals that purchasers could obtain drugs from. In one conversation he informed a buyer that one of the independent sellers had just obtained 300 $10 packages of narcotics. In the other conversation he gave the caller the phone number of one of the independent contractors who had obtained large amounts of narcotics from Lee to sell.

is entitled to great deference on review and should not be disturbed unless it is without foundation." *United States v. Blas,* 947 F.2d 1320, 1328 (7th Cir.1991) (internal quotation omitted); *see United States v. Harty,* 930 F.2d 1257, 1266 (7th Cir.1991) (appellate court will not reweigh the evidence). Therefore, the district court's determination was not clearly erroneous in its finding that Willie was involved in every phase of the conspiracy and that the entire amount of narcotics was reasonably foreseeable to him. Accordingly, the district court correctly held Willie accountable for the entire amount of drugs attributable to the conspiracy.

### C. Commencement of Willie Edwards's Involvement in the Organization

 Finally, Willie asserts that the evidence fails to support the district court's holding that he participated in the conspiracy as early as February 1989. This is also a factual determination that we review for clear error. Therefore, Willie argues that the district court should not have increased his criminal history category pursuant to U.S.S.G. § 4A1.1(d) and (e). Section 4A1.1 of the Sentencing Guidelines instructs a district court to:

(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

(e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) [for a prior sentence of imprisonment exceeding one year] or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.

U.S.S.G. § 4A1.1(d) and (e). Willie had been released from confinement in a state prison on February 24, 1987, and transferred to probation status until January 24, 1989.

(PSI at 6.) Although Willie, in his brief, states that his part in the conspiracy did not commence before February 1989, at trial, the judge found otherwise and stated that Willie's involvement in the conspiracy began as early as February 24, 1988, during his period of probation, and continued until at least September 1990.[6] Thus, the sentencing court increased his criminal history category by three points pursuant to U.S.S.G. § 4A1.1(d) and (e). At oral argument Willie's counsel asserted that he was only involved in the conspiracy between August and October of 1990. Not at all coincidentally, this is the time period in which the FBI wire tap was in place and numerous conversations were recorded in which Willie discussed and arranged the sale of narcotics for the drug conspiracy. We agree with the trial judge's finding that the evidence is sufficient to establish that Willie's involvement in the conspiracy commenced within one year of his release from state prison.

Willie states several reasons, without supporting case law, why he believes the district court clearly erred in reaching its determination that he was on parole when his involvement with the conspiracy began. Initially, he complains that the only evidence the Government presented, which supports the sentencing court's finding that he participated in the narcotics conspiracy any time prior to 1990, was the testimony of Lorri at his sentencing. Lorri repeatedly testified that, although, she did not know the exact date that Willie started selling drugs for Lee, she was certain that it was within less than a year from the time that he was released from prison. Willie states that the fact that he was employed as a laborer at National Briquette Corporation in East Chicago, Indiana from December 1, 1987, to November 17, 1989, is unrefuted evidence that Lorri's testimony was erroneous. Apparently, it is Willie's argument that because he had a job during this time period he would have been unable to participate in the narcotics conspiracy. We find this argument to be unpersuasive. Additionally, Willie asserts that he was

---

**6.** On September 20, 1990, one of several phone conversations in which Willie discussed narcotics was tape recorded by virtue of the Government wire tap. This was the most recent tape record-

ed conversation involving Willie that was admitted at trial and clearly establishes that he was involved with the conspiracy until at least this date.

not involved with the conspiracy while he was on probation, because if he had been it would have likely been discovered by the probation department. Once again, we hold that this argument is without merit, for unfortunately all criminal activities are not discovered by the probation officer assigned to a particular defendant.

In closing, Willie asserts that,

[t]he more accurate interpretation of Willie's involvement in the conspiracy was an escalation over time as Willie became more and more hooked on the heroin and that his involvement did not ever reach the level claimed by the [G]overnment because Lee Edwards would never have allowed that level of involvement.

In support of this contention, Willie's counsel at sentencing solicited testimony from Lorri on cross-examination in which she revealed that she was personally snorting about seven to eight hundred dollars worth of heroin a day, that this drug use affected her ability to remember dates, and that Willie's involvement in the drug conspiracy was a progression starting with him receiving heroin at no cost and then some time later beginning to sell drugs for Lee. Willie is essentially attacking the district court's credibility determination with respect to the testimony of Lorri. We will not reassess a district court's credibility determination. *House*, 110 F.3d at 1286. "We defer to the sentencing court's credibility determinations because the presiding judge while listening to the witnesses' testimony is in the best position to observe, weigh, and evaluate a witness' verbal as well as nonverbal behavior." *United States v. Pitz*, 2 F.3d 723, 727 (7th Cir.1993); *see United States v. Tolson*, 988 F.2d 1494, 1497 (7th Cir.1993).

Even if Willie explicitly argued that Lorri's testimony was so self-serving that it would be clearly erroneous to credit it,[7] such an argument would be without merit. *House*, 110 F.3d at 1286. "[T]he witnesses' motives for testifying do not render their testimony inherently unreliable." *United States v.*

*Garcia*, 66 F.3d 851, 857 (7th Cir.1995); *see United States v. Crockett*, 82 F.3d 722, 727 (7th Cir.1996) (upholding decision of district court to credit testimony of coconspirator).

As this court has held countless times, sentencing judges are fully capable of considering the motivations of witnesses in weighing conflicting evidence and, because they have had an opportunity to assess the demeanor of the witnesses, are in a better position than this court to make credibility determinations. For this reason, arguments which simply urge a reassessment of a district court's credibility determination "are wasted on an appellate court." *House*, 110 F.3d at 1285–86 (citations omitted and quoting *United States v. Molinaro*, 877 F.2d 1341, 1347 (7th Cir.1989) (finding that court did not commit clear error in crediting testimony of "an admitted liar, convicted felon, large scale drug-dealing, paid [G]overnment informant")); *see also United States v. Crockett*, 82 F.3d 722, 727 (7th Cir.1996) (stating that testimony of admitted drug user was not unreliable because in determining credibility, drug use is a factor that can be weighed). Thus, the district court did not commit error in crediting the statements of Lorri and determining that Willie became involved with the drug trafficking conspiracy by at least February 1988. Accordingly, the sentencing court's imposition of the three-level criminal history category enhancement pursuant to U.S.S.G. § 4A1.1(d) and (e) was proper.

## III. CONCLUSION

We hold that the district court did not commit clear error on any of the issues raised by the Appellant.

AFFIRMED.

---

7. Willie is represented by different counsel now than he was at sentencing. His counsel at sentencing brought out testimony from Lorri that revealed that she had plead guilty to drug charges and was still awaiting sentencing that would include a recommendation from the Government based on the nature and extent of her cooperation. of her cooperation.