134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mohammed COOK, Jr., Defendant-Appellant.
 No. 97-2335.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 16, 1997.
Decided Jan. 8, 1998.
 
 Before ESCHBACH, FLAUM and EVANS, Circuit Judges.
 
 
 1
 Mohammed Cook, Jr, pleaded guilty to distribution and possession with the intent to distribute cocaine base, and to conspiracy to distribute and possess with the intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(I) and 846. At sentencing, Cook disputed the quantity of crack cocaine attributable to him as relevant conduct for purposes of his base offense level. Specifically, Cook maintained that he was not responsible for the quantity of cocaine attributable to the entire conspiracy. The district court disagreed, however, and found Cook responsible for the entire amount. On appeal, Cook contends that the district court clearly erred in relying on the testimony of two of Cook's co-defendants in determining Cook's relevant conduct under § 1B1.3(a) of the United States Sentencing Guidelines. We affirm.
 
 
 2
 At Cook's sentencing hearing, Federal Bureau of Investigation (FBI) Special Agent Brenn Tallent testified that in mid-April 1996, he received information from a confidential informant that a person known as "M.K.," whom Tallent later identified as Cook, was selling crack cocaine in the vicinity of the housing projects around Apple Lane in Murphysboro, Illinois. According to Tallent, the informant had made two previous buys from M.K. and knew M.K. to be connected with a blue late 1980's model Chevrolet Caprice. Two other men, later identified as defendants Clarence F. Berry and Lawrence L. McCoy, worked with M.K. out of the Caprice, which was registered to Berry
 
 
 3
 Based on the information from the informant. Tallent conducted a series of controlled buys from each of the defendants on April 16, 18, and 19, 1996. McCoy and Berry generally sold drugs out of the Caprice, which was parked on Apple Lane in front of the residence of Cook and his girlfriend, Patronia Dowell. On April 18, law enforcement agents observed McCoy and Berry in the Caprice at the Amtrak station in Carbondale, Illinois. McCoy and Berry picked up Cook from the station, drove to the Knights Inn Motel in Carbondale and entered Room 230, and then drove back to Murphysboro. The motel room was rented by Jason Williams, the resident of the duplex adjacent to Cook's and the boyfriend of McCoy's cousin.
 
 
 4
 The following day the informant made a $ 100 purchase of crack cocaine from Cook. That night, the agents executed a search warrant on Room 230 of the Knights Inn and seized 55.6 grams of crack cocaine, approximately § 5,877.18 in U.S. currency, and 123 $10 bags of marijuana. As the search neared completion, McCoy and Berry drove into the parking lot, at which point they were stopped, searched, and arrested On Berry, the agents found $850.98, including pre-recorded buy money, and several $ 10 bags of marijuana. On McCoy, the agents found the motel room key. Cook was arrested at the Apple Lane residence later that day, and § 100 of pre-recorded buy money was found on his person.
 
 
 5
 Detective Bob Bums, employed by the Jackson County Sheriffs Department, participated in the arrest of McCoy and Berry. Bums testified that McCoy and Berry had been separated from the time they were removed from the Chevrolet Caprice and arrested until after they made their statements to the police. Berry was taken to the Murphysboro police station and interviewed by FBI Agent Bob Dueker. Berry identified Cook as his source. Berry stated that he and McCoy had made three trips to Murphysboro to sell crack cocaine for Cook. For every § 100 of crack cocaine rocks he and McCoy sold, they would receive a $20 rock, and for every $50 of marijuana they sold, they would receive a $10 bag of marijuana. Berry estimated that he had made approximately $1,900 in profit from prior cocaine sales.
 
 
 6
 Detective Bums interviewed McCoy. Intially, McCoy did not identify Cook as being involved in distributing crack cocaine. However McCoy identified Cook after Detective Dueker came into the room and revealed that Berry was giving a statement. McCoy then identified Cook (M.K.) as his source and stated that McCoy was distributing crack cocaine for Cook. Like Berry, McCoy stated that he had made three trips to Murphysboro, and he detailed the same financial arrangement with Cook as Berry had. McCoy stated that on the first trip that he and Berry made to Murphysboro, Cook supplied them with 1/2 ounce of crack cocaine; on the second trip, they received 250 $20 rocks; and on the third trip, they received 300 $20 rocks.
 
 
 7
 Both McCoy and Berry testified at the sentencing hearing. Their testimony was consistent with the testimony of Agent Tallent and Detective Burns. Berry testified that he began dealing crack cocaine for Cook at the age of fourteen or fifteen Similarly, McCoy, who was twenty-one years old at the time of his testimony, stated that he started dealing for Cook at the age of sixteen. McCoy said that Cook had told him about Murphysboro, and that he (McCoy) came to sell drugs in Murphysboro because he owed Cook some money from a previous drug deal. McCoy and Berry claimed that they would stay in a motel when the' came to Murphysboro and that Cook took care of the room registration. They also claimed that the crack cocaine and marijuana found in the motel room belonged to Cook.
 
 
 8
 At sentencing, Cook testified on his own behalf Cook denied that Berry and McCoy worked for him. Rather, he claimed that he worked for them on occasion. On cross-examination, Cook admitted that he neglected to mention a couple of times in March 1996 when he sold two 25-rock bags of crack cocaine for Berry and McCoy, Cook also admitted that when he was arrested, he told Detective Bums and Agent Dueker that he had never sold crack cocaine. However, he attributed this inconsistency to the fact that he was high at the time. Cook also admitted to having lied about the source of the money in his possession when he was arrested.
 
 
 9
 The district court credited the testimony of Berry and McCoy, and attributed 124 grams of crack cocaine to Cook:
 
 
 10
 The Court's [sic] heard the testimony of Mr. Berry, Mr. McCoy and the defendant, as well as the testimony of law enforcement officers. And discounting what the law enforcement said, this Court, in assessing the amounts that Berry and McCoy in their testimony, that they worked the tile defendant here, Mr. Cook, and started working for him at a young age, and that Mr. Cook brought them down here, and they sold drugs for Mr. Cook, and. coupled with what they had originally told law enforcement, observing Mr. Cook on the witness stand,.. observing his demeanor, it is without a doubt to this Court that Mr. Cook was involved in this conspiracy up to his wazoo, ... and that clearly the drugs that ... Berry and McCoy testified [about regarding] ... the third tip of approximately 60 grams and the 55.3 or four grams that was in the hotel, as well as the other drugs that was [sic] mentioned, it's clear to this Court that Mr. Cook is responsible and liable for approximately over 124 grams of crack cocaine, and I think if we got McCoy and Berry back and did a--and really had them put their thinking caps on, it wouldn't surprise the Court with what Mr. Cook was down here for five months, probably exceeded over 150 grams.
 
 
 11
 But the attorneys, in terms of proof before this Court, the proof is way beyond the preponderance of the evidence that Mr. Cook was involved in well over 150 grams or well over 50 grams of cocaine base. And, in fact., it's well over 124 grams of cocaine base.
 
 
 12
 * * * The Court believes that Mr. Cook, in effect, committed perjury on this stand. And he has not truthfully admitted the relevant conduct for which he's accountable, and he has falsely denied and frivolously contested relevant conduct that the Court believes to be true and has acted in a manner inconsistent with acceptance of responsibility.... Specifically, is taking the fact that McCoy and Berry said that they worked for Cook, and Cook said that he worked for them. I just find that incredible to believe under the facts and circumstances of this case, The base offense level corresponding to 124. grams of crack cocaine is level 32. This base offense level was also Cook's adjusted offense level because the district court denied Cook acceptance of responsibility. With an offense level of 32, a criminal history category of III, and a sentencing range of 151-188 months' imprisonment, the district court sentenced Cook to a 168 months' imprisonment.
 
 
 13
 Cook argues that the district court erred in finding him accountable for the quantity of crack cocaine attributable to the entire conspiracy based on the uncorroborated testimony of Berry and McCoy.[1] This argument is not new. The court has issued countless decisions discussing the deference afforded to district court assessments of credibility and, as is usually the conclusion in cases such as this, Cook has failed to demonstrate that the district court's findings were clearly erroneous.
 
 
 14
 At sentencing, the government need only establish the drug quantity attributable to a defendant by a preponderance of the evidence. United States v. Garcia, 66 F.3d 851, 856 (7th Cir.1995) (citation omitted). We review a district court's determination with respect to relevant conduct for clear error. United States v. Edwards, 115 F.3d 1322, 1325 (7th Cir.1997). We will not find clear error "unless upon review [we are] left with a definite and firm conviction that a mistake has been committed." Id. (internal quotation marks and citations omitted). Because Cook's base offense level of 32 encompasses at least 50 grams but less than 150 grams of cocaine base, to warrant reversal Cook must show that the district court clearly erred in attributing 50 or more grams of crack cocaine to him. U.S.S.G. § 2D I 114) See United States v. Taylor, 116 F.3d 269, 273 (7th Cir.1997).
 
 
 15
 Section 1B1.3 of the Sentencing Guidelines defines relevant conduct for purposes of determining a defendant's base offense level. Relevant conduct is "all reasonably foreseeable acts and omission, of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(I)(B). "A convicted conspirator [like Cook]" is responsible for the amount of [drugs] he actually distributed and the amount involved in transactions reasonably foreseeable to him. United States v. Lindsey, 123 F.3d 978, 980 (7th Cir.1997) (citation omitted).
 
 
 16
 Cook contends that the district court clearly erred in finding him responsible for all of the drugs possessed and/or sold by Berry and McCoy based on their uncorroborated testimony alone. According to Cook, other than the testimony of Berry and McCoy, the only evidence associating him with drugs is the $100 in pre-marked buy money found in his possession and some small sales of crack cocaine. McCoy and Berry, on the other hand, had a pager, an automobile out of which they sold crack cocaine, and a key to the motel room where a substantial amount of crack cocaine and money were found. Cook argues that because McCoy and Berry (as accomplices) "had everything to gain from placing the blame" on Cook and because all of the objective evidence demonstrates that McCoy and Berry were exclusively responsible for the large quantities of crack cocaine at issue in this case, the district court erred in relying on the testimony of McCoy and Berry.
 
 
 17
 Cook does nothing more than attack the district court's credibility determination with respect to the testimony of Berry and McCoy. The law is well established that this court will not reassess the sentencing court's credibility determinations " 'because the presiding judge while listening to the witnesses' testimony is in the best posit ion to observe, weigh, and evaluate a witness' verbal as well as nonverbal behavior.' " Edwards, 115 F.3d at 1331 (quoting United States v. Pitz, 2 F.3d 723, 727 (7th Cir.1993)). "[A]rguments which simply urge a reassessment of a district court's credibility determination are wasted on an appellate court." Id. (quoting United States v. House, 110 F.3d 1281, 1286 (7th Cir.) (internal quotation marks and citations omitted), cert. denied, 118 S. C.:. 199 (1997)). " 'The sentencing judge's factual determination that [the defendant] was part of the larger conspiracy and responsible [for the entire amount] is entitled to great deference on review and should not be disturbed unless it is without foundation." Id at 1329-30 (quoting United States v. Blas, 947 F.2d 1320, 1328 (7th Cir.1991) (citations and internal quotation marks omitted))
 
 
 18
 The district court's reliance on the testimony of Berry and McCoy is not without foundation. Berry and McCoy were separated immediately after their arrest, yet their post-arrest statements regarding Cook's involvement in and orchestration of the conspiracy were consistent Also weighing heavily in the balance was the fact that Berry and McCoy began working for Cook in their midteens. It is indeed unlikely that teenagers influenced Cook, who is roughly twelve years older than McCoy, to sell drugs for them. Furthermore, the district court found Cook's testimony completely incredible, going so far as to accuse Cook of perjury.
 
 
 19
 The fact that McCoy and Berry, as co-conspirators, may have had an incentive to testify against Cook does not render the district court's belief of that testimony clearly erroneous " '[T]he witresses' motives for testifying do not render their testimony inherently unreliable" Edwards, 115 F.3d at 1331 (quoting United States v. Garcia, 66 F.3d 851.857 (7th Cir.1995)). In the past, his court has affirmed the district court's drug quantity determinations even where the district court relied on the testimony of co-conspirators. See United States v. Crockett, 82 F.3d 722, 727 (7th Cir.1996); House, 110 F.3d at 1285
 
 
 20
 " '[S]o long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence.' " Edwards, 115 F3d at 1326-27 (quoting United States v. Taylor, 72 F.3d 533, 543 (7th Cir.1995) (citations and quotations omitted)). As previously discussed, the district court had reason to believe Berry and McCoy rather than Cook. Because the district court credited Berry and McCoy's testimony that Cook orchestrated the conspiracy, it properly concluded that Cook was accountable for the total amount of cocaine associated with the conspiracy. See id. at 1328 (because the trial court found that the defendant was involved in every phase of the conspiracy, it properly held the defendant responsible for the total quantity of drugs dealt by the conspiracy).
 
 
 21
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Cook maintains that he was responsible for at least 5 grams but less than 20 grams of crack cocaine, giving him a base offense level of 26 and a sentencing range of 78-97 months. However, the statutory minimum sentence with respect to the conspiracy count (Count I) is 120 months, which operates as a floor on Cook's sentence regardless of his offense level