UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 26, 2006
Decided April 28, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-1579

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

    *v.*

CLARENCE L. JOHNSON,
    *Defendant-Appellant*.

Appeal from the United States District
Court for the Eastern District of
Wisconsin

No. 02-CR-144

Charles N. Clevert, Jr.,
*Judge*.

## O R D E R

This appeal arises from a federal investigation of drug trafficking in Milwaukee, Wisconsin that led to a number of convictions after Marvel Belser was arrested and agreed to cooperate with the government. Largely based on Belser's testimony, a jury found Clarence Johnson guilty of conspiring to distribute at least 5 kilograms, and distributing at least 500 grams, of cocaine, and using a communications facility in the process. *see* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B), 843(b). Johnson was sentenced after *United States v. Booker*, 543 U.S. 220 (2005), to a total of 190 months' imprisonment. He filed a notice of appeal, but newly appointed appellate counsel can see only frivolous arguments and so moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Johnson has responded to counsel's motion. *See* Cir. R. 51(b). Because counsel's supporting brief is facially adequate, we limit our review to the potential issues he and Johnson identify. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997).

Counsel sees six possible issues. Counsel first considers challenging the sufficiency of the evidence underlying Johnson's convictions. During its investigation the government never utilized an undercover agent to purchase drugs from Johnson, so to prove the distribution charge the prosecution elicited Belser's testimony explaining a transaction that occurred before Belser had been arrested. Surveillance officers saw Belser enter his girlfriend's house, leave with a bag, and drive to a parking lot where he placed the bag in Johnson's trunk. Belser explained at trial that he stored drug money at his girlfriend's house and that the bag contained $60,000, which he owed for three kilograms of cocaine Johnson had fronted him. Even though the government did not catch Johnson with drugs, and his conviction relied on the testimony of Belser, who admitted dealing drugs himself, it would be frivolous to contend that the jury was not allowed to believe Belser's testimony. *See United States v. Williams*, 216 F.3d 611, 614 (7th Cir. 2000) (jury's credibility determination will be reversed only under exceptional circumstances, such as where credited testimony contradicts laws of nature or other indisputably true evidence); *United States v. Edwards*, 115 F.3d 1322, 1331 (7th Cir. 1997) (we will not reverse a jury's credibility determination even where credited testimony is totally uncorroborated and comes from confessed law-breakers, drug dealers, or paid government informants).

To prove the conspiracy charge, the government introduced recordings Belser helped make of telephone conversations between himself and Johnson. In one recording they are heard planning a drug deal, and in the others discussing Belser's obligation to repay a debt to Johnson. Belser testified that, between 2000 and 2003, he purchased large amounts of cocaine from Johnson and Johnson's son a number of times. On one occasion Belser's courier absconded with drugs Johnson fronted him, Belser explained, and this gave rise to the debt they discuss on the tapes. Although Belser owed him $100,000, Johnson trusted Belser enough that he continued to sell him cocaine. Moreover, Johnson would front the cocaine, relying on Belser's ability to quickly sell the drugs for cash, which he used as payment. Thus, crediting Belser, Johnson sold cocaine to him precisely because Johnson knew that he could efficiently distribute it. It would be frivolous to contend that is not enough to support the jury's conclusion that Johnson joined the conspiracy. *See United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001); *United States v. Stephenson,* 53 F.3d 836, 846 (7th Cir. 1995).

Counsel next considers whether Johnson might argue that a fatal variance exists between the charged conspiracy to distribute cocaine in Milwaukee and the conspiracy the government proved. At closing, in order to illustrate the concept of a conspiracy to the jury, the government explained that a conspiracy also existed between Johnson and his son (Johnson's son was a co-defendant and pleaded guilty to the conspiracy charge). But it would be frivolous on the basis of that comment to contend that the government proved *only* a conspiracy between Johnson and his

son, and not the charged conspiracy to distribute cocaine in Milwaukee that both Johnson and his son joined by dealing to Belser. As already explained, there was ample evidence supporting the charged conspiracy. Evidence of another conspiracy between Johnson and his son was incidental. *See United States v. Messino*, 382 F.3d 704, 709 (7th Cir. 2004) (even if evidence at trial shows existence of multiple conspiracies, fatal variance will not be found if reasonable juror could have found beyond a reasonable doubt that defendant was part of single, charged conspiracy); *United States v. Williams*, 272 F.3d 845, 863 (7th Cir. 2001).

Next, counsel assesses, as Johnson proposes, an argument under *Batson v. Kentucky*, 476 U.S. 79 (1986), based on the government's striking an Hispanic juror. The argument has been forfeited because Johnson's counsel did not at the time object to the peremptory strike. *United States v. Stephens*, 421 F.3d 503, 519 (7th Cir. 2005). When reviewed for plain error, a *Batson* challenge would be frivolous because Johnson concedes that the government based the strike on the prospective juror's family member's criminal record. *See United States v. Brown*, 289 F.3d 989, 993 (7th Cir. 2002).

Next, counsel assesses the strength of contending—as Johnson suggests—that he was denied a fair trial because in closing the government commented: "A defendant with no defense attacks the witness, attacks the victims, attacks the police, or all of the above. And that's what you've seen here." The comment was prompted by Johnson's trial strategy, which was to call into question the truth of Belser's testimony. It is possible to interpret the comment as remarking on Johnson's decision not to testify, but the more likely interpretation, it seems to us, is that the defense Johnson chose to pursue at trial was weak. The prosecutor should have omitted the phrase "no defense". In any event, before the government's rebuttal, the district judge instructed the jury that the government retained the burden of proving guilt and that Johnson was not required to mount a defense. During rebuttal the government echoed that instruction and, before the jury commenced deliberations, the judge repeated it. To the extent the prosecutor's comment can be construed as inviting the jury to consider Johnson's failure to testify as evidence of guilt, the judge and the prosecutor herself remedied the error. Given this context, it would be frivolous to argue that the lone comment produced a forbidden inference. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987); *United States v. Wesley*, 422 F.3d 509, 518-519 (7th Cir. 2005).

Both counsel and Johnson contemplate an argument under *Booker* that the judge should not have held Johnson accountable at sentencing for more cocaine than the jury found. But the Supreme Court held in *Booker* that district judges may resolve factual disputes material to sentencing as long as they treat the guidelines as advisory rather than conclusive. Johnson was sentenced after Booker, and the district judge followed that decision's approach.

Last, counsel correctly observes that it would be frivolous to contend that trial counsel was ineffective because such a claim is best reserved for collateral attack. *See, e.g., United States v. Rezin*, 322 F.3d 443, 445 (7th Cir. 2003).

In addition to the potential arguments identified by counsel, Johnson suggests two more that merit little discussion. First he proposes that he was denied the right to confront "Sharky", the courier who absconded with the drugs destined for Belser. But it was Belser's testimony, not Sharky's, that inculpated Johnson. Although the testimony related Sharky's stealing drugs from Johnson, the government did not call Sharky or introduce into evidence any testimonial statements by Sharky. Finally, Johnson suggests that the district judge should not have admitted an audio recording of him and Belser discussing a drug deal because, Johnson asserts, the tape was partially inaudible, incomplete and altered. It does not appear that counsel ever lodged an objection to the tape's admission. In any event it was properly admitted. *See United States v. Jordan*, 223 F.3d 676, 688 (7th Cir. 2000) (inaudible portions of tape bear only on its weight, not admissibility); *United States v. Dawson*, 425 F.3d 389, 393 (7th Cir. 2005) (gaps do not render tapes inadmissible). The argument would be frivolous.

Counsel's motion to withdraw is GRANTED and this appeal is DISMISSED.