**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Granvel E. WINDOM, Defendant–Appellant.**

No. 94–3351.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 1, 1995.

Decided April 30, 1996.

Stephen J. Liccione, (submitted), Office of U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

John A. Birdsall, Gonzalez & Saggio, Milwaukee, WI, for defendant-appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and LEINENWEBER, District Judge.*

LEINENWEBER, District Judge.

On April 14, 1992, a grand jury indicted the appellant, Granvel E. Windom ("Windom"), on six counts of possession with intent to distribute heroin and cocaine, and on three firearm related counts. He was convicted by a jury of four of the possession with intent to distribute counts, and the lesser included offense of simple possession on the other two drug counts. He also was convicted of two of the three firearm counts. Because the firearm counts required mandatory minimum consecutive prison terms, he was sentenced to the minimum sentence authorized which was 410 months.[1]

---

* Harry D. Leinenweber, United States District Court Judge, sitting by designation.

1. The sentence imposed by the district court was computed as follows:

| Count | Offense | Sentence | Consecutive/ Concurrent |
|---|---|---|---|
| 1 | poss/int | 110 mos | concurrent |
| 2 | poss | 12 mos | concurrent |
| 3 | poss/int | 110 mos | concurrent |
| 4 | poss/int | 110 mos | concurrent |
| 5 | poss/int | 110 mos | concurrent |
| 6 | poss | 12 mos | concurrent |
| 7 | u/c firearm | 60 mos | consecutive |
| 8 | u/c firearm | 240 mos | consecutive |
| | | Total—410 mos | |

The 110–month sentence for the possession with intent to distribute counts was based on the district court's findings that Windom's criminal

He appealed to this court and we reversed two possession with intent to distribute counts and a related firearm violation and remanded the case for resentencing. *United States v. Windom*, 19 F.3d 1190 (7th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). On remand, the district judge sentenced Windom to 180 months in prison.[2]

In both sentencing hearings, the District Judge was called upon to make calculations under the sentencing guidelines for the drug possession/distribution counts. He concluded, based on testimony of a DEA agent, that 782.3 grams of cocaine and 16 grams of heroin were attributable to Windom. This resulted in a base offense level of 26 under § 2D1.1(a)(3) and the drug quantity table located at § 2D1.1(c)(9). The cocaine quantity included 762 grams recovered as a result of a search warrant execution carried out by the Milwaukee Metropolitan Drug Enforcement Group on February 11, 1991, which was attributed by the District Judge to Windom, but with which he had not been charged. Thus, the uncharged conduct constituted over 90 percent of all the cocaine attributed to Windom for sentencing purposes.

At the original sentencing hearing, a special agent with the Bureau of Alcohol, Tobacco and Firearms, Scott Perala ("Perala"), testified concerning the February 11, 1991 incident. His knowledge of and testimony relating to Windom's connection to the drug recovery was based on a report of the Milwaukee County Sheriff concerning ownership and possession of the apartment in which the cocaine was found, and upon information obtained from two reliable informants. The building was owned by a Brenda Faye Brown ("Brown"). However, the utilities were registered in Windom's name. Brown told the sheriff that she had rented the apartment to a Mr. and Mrs. Horton (the "Hortons"). One day in December, 1990 when she went to the premises she met Windom, who told her he was taking care of the premises for the Hortons. On this occasion he paid their rent in cash to her and he continued to pay the rent on subsequent occasions through March, 1991. Brown said that when she went to the premises on the first occasion she found that a security door had been installed without her permission. Perala testified that he had received information from two reliable sources that corroborated the statements of Brown and supplied additional information that Windom and others had rented and were using the apartment for purposes of cutting, packaging and selling cocaine. Windom's role, according to these sources, was as keeper of the residence, to supply security, and to make sales of heroin and cocaine. Perala testified that in his opinion these sources were reliable, which was based on the quality of information that they had provided him and the Milwaukee police and sheriff's departments by these sources in the past. Since both sources were involved in an ongoing investigation concerning a federal court case, he declined to reveal their names. Based on this evidence, the District Judge concluded that Windom was chargeable with the 762 grams of cocaine and that the very best position in which Windom could place himself concerning the disputed drugs was that of a co-conspirator with joint possession of the cocaine with others. The district judge was not asked nor did he find at the first sentencing hearing that Windom played a minor role in the offenses.[3]

---

history was V and his offense level was 26, with a resulting guideline range of 110 to 137 months.

**2.** The sentence imposed at resentencing was computed as follows:

| Count | Offense | Sentence | Consecutive/ Concurrent |
|---|---|---|---|
| 1 | poss/int | 120 mos | concurrent |
| 2 | poss | 12 mos | concurrent |
| 3 | poss/int | 120 mos | concurrent |
| 6 | poss | 12 mos | concurrent |
| 7 | u/c firearm | 60 mos | consecutive |
| | | Total—180 mos | |

In imposing sentence, the district court explained the increase in the guidelines sentencing by noting that our action in eliminating the 240 months mandatory consecutive sentence imposed on Count 8 constituted a sufficient change of circumstances to justify a sentence toward the middle of the guideline range.

**3.** A minor role in the offense under guideline § 3B1.2(b) is defined *infra* at pages 747–48 of this opinion. A minor role in the offense would decrease Windom's offense level 2 levels, to 24. The guideline range for criminal history V at this offense level is 92 to 115 months.

On his first appeal, Windom did not raise as error either the attribution of the 762 grams of cocaine or the failure to find that he had a minor role in the offense. Windom did, however, argue that the 410–month sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. Insofar as we reversed three substantive counts of conviction which had a major impact on his sentence, we remanded the case for resentencing without reaching the propriety of his sentence.

At resentencing, Windom again argued that the evidence tying him to the 762 grams of cocaine was insufficient to attribute the conduct to him. He also raised for the first time that he should be awarded a two-level reduction for having played a minor role in the offense. The district court disposed of the attributable conduct argument by relying on the evidence and findings made in the initial sentencing hearing. He added, however, that certain new information contained in the supplemental presentence report, which he stated he was not relying on either to enhance or reduce the offense level, "simply underscore[d] the fact that the court made the right decision the first time."[4] For similar reasons, he declined to award Windom a reduction as a minor participant.

■■■ On appeal, Windom contends that the district court clearly erred in including the 760 grams of cocaine as relevant conduct and in denying him a two-level reduction as a minor participant. Initially, the government contends that Windom waived these two contentions by failing to raise them in his first appeal. In support it cites several cases where waiver was found when a Section 2255 petitioner sought to raise non-constitutional errors for the first time. However, these cases are distinguishable because they involve proceedings after final judgments had been entered by the trial court. The law is clear that decisions of a lower court that have not been ruled on by the appellate court can be reconsidered at the request of a party by the lower court at anytime prior to the entry of final judgments. All such decisions are interlocutory and can be reconsidered when justice requires. *United States v. Uccio*, 940

F.2d 753, 758 (2nd Cir.1991). This is the reciprocal to the law of the case doctrine: upon remand a district court may reconsider any matter that is not expressly or implicitly part of the decision of the court of appeals. In *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir.1994), the government made a similar waiver argument on a appeal of a resentencing. The appeals court stated in response that the "government's position [that failure to raise a guideline argument on the first appeal constitutes waiver] is not correct as a general proposition...." Accordingly, there was no waiver on Windom's part by virtue of failure to raise these matters in his first appeal.

■■■ The base offense level for a narcotic offense is in part determined by the quantity of narcotics for which the defendant is accountable. U.S.S.G. § 2D1.1(a)(3) and (c). The greater the quantity, the higher the offense level. The quantity includes not only the amount involved in the offense of conviction but the quantity involved in "relevant conduct"; that is, "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (incorporating by reference U.S.S.G. § 3D1.2(d)). A defendant need not be either charged or convicted of carrying out these other acts. *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir.1991). The sentencing judge is required to consider relevant conduct when calculating the base offense level to determine the appropriate guideline range. *United States v. Ruiz*, 932 F.2d 1174, 1183 (7th Cir.1991). A district court's calculation of the quantity of drugs involved in the offense and in relevant conduct is a finding of fact and is subject to the "clearly erroneous" standard. *United States v. Montgomery*, 14 F.3d 1189, 1196 (7th Cir. 1994). We must affirm the quantity finding unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *Duarte*, at 1262. The uncharged conduct need only be supported by a preponderance of the evidence. *United States v. Ross*, 905 F.2d 1050,

---

**4.** This new information is detailed *infra* at pages 747–48 of this opinion.

1054 (7th Cir.1990). The rules of evidence do not apply and the sentencing judge is free to consider a wide range of evidence, including hearsay. *United States v. Corbin,* 998 F.2d 1377, 1385 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994). However, a defendant has a due process right to be sentenced on the basis of reliable information, and the relaxed standards at sentencing are somewhat in tension with that right. *United States v. Campbell,* 985 F.2d 341, 348 (7th Cir.1993). We have resolved this tension by requiring that a defendant have a reasonable opportunity to rebut contested hearsay and that the contested hearsay be reliable. To succeed on a challenge the defendant must show that the information before the court was inaccurate and the court relied upon it. *Id.; United States v. Musa,* 946 F.2d 1297, 1306 (7th Cir.1991).

■ The evidence relied upon by the District Judge at the first sentencing hearing included the finding of 762 grams of cocaine by police executing a search warrant at 3119 North 24th Street in Milwaukee. Although Windom was not present at the time of the raid, the utilities to the apartment were registered in his name, he was paying the rent in cash directly to the owner, and rent receipts were prepared in his name. There was a security door installed at the apartment unbeknownst to the owner. In addition, two reliable informants had told the agent that Windom had rented and used the apartment to cut, package, and sell illegal drugs. Windom neither testified nor offered any other evidence to rebut this evidence.

At the second sentencing hearing, the court received substantial amounts of new evidence implicating Windom in a major distribution ring run by a Milwaukee street gang called the "Crypts."[5] This evidence revealed that the defendant was connected with at least four other Milwaukee drug houses which were part of the Crypt organization. The source of this evidence was testimony of witnesses in another federal court drug case, United States v. Twan James, et al., (E.D.Wis. Case No. 92–CR–178). While the District Judge stated on the record that he was not relying on this evidence to enhance the offense level under the guidelines, he did, however, appear to consider it as corroborative because he stated that the new evidence "underscored[ed] the fact that the court had made the right decision the first time." Again, Windom produced no evidence to dispute any of these allegations, either new or old. His only remarks concerning drug dealing were made at the elocution stage of the sentencing hearing in which he made an unsworn declaration that he was not a member of the Crypt gang. He, however, did not dispute any of the factual allegations of drug dealing made by any of the out-of-court declarants. The only evidence that Windom did produce disclosed that he had made strides towards rehabilitation and was shaking his drug addiction. All of the information submitted on the subject was either in the record from the prior sentencing hearing or was contained in the presentence report which Windom received prior to the sentencing hearing. Thus, Windom had an adequate opportunity to rebut the hearsay evidence. He chose not do so. Cf. *United States v. Cusenza,* 749 F.2d 473 (7th Cir. 1984) (Where defendant has adequate opportunity to rebut hearsay statements, a sentencing court may properly rely upon them where he fails to do so). The district court's finding that Windom was accountable for the 762 grams of cocaine was not clearly erroneous.

■ The next point raised by Windom in this appeal is his contention that the district court erred when it refused to award him a two-level reduction for a "minor role" in the offense. The district court reasoned that a minor role frankly did not apply to Windom under the facts presented. We, likewise, review this finding for clear error. *United States v. Pitz,* 2 F.3d 723, 732 (7th Cir.1993).

Guideline § 3B1.2(b) provides that "[i]f the defendant was a minor participant in any criminal activity, decrease by 2 levels." The Commentary provides that "a minor participant means any participant who is less culpa-

---

5. The name of the gang is either "Crips" or "Crypts." The former is used in the transcript of the proceedings. The latter is used in the presentence report.

ble than most other participants, but whose role could not be described as minimal." The Commentary, however, also provides that "[i]f a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense."

■ It is clear from the facts of this case, with regard to the offenses charged and attributed, that Windom does not fit into the category of "minor participant." The role of minor participant is customarily reserved for the bit players in a larger conspiracy. *United States v. Osborne,* 931 F.2d 1139, 1158–59 (7th Cir.1991). Windom contends that he is entitled to the reduction because of what he terms to be the lack of proof or "nexus" between the defendant and the drugs found at the Brown residence. He claims that this lack of proof "strongly suggests that Windom did not have the knowledge of the full scope of the enterprise." However, Windom is not charged with the full scope of the Crypt enterprise, which was estimated by the government to involve between 700 and 1000 grams of heroin and between 15 and 50 kilograms of cocaine. Windom was only charged with the specific amounts of drugs which he possessed at the time he was arrested, and only the amount recovered in the raid on the Brown residence. There was sufficient evidence to establish that he was aware of these 762 grams. According to the testimony of Agent Perala, not only were the utilities registered in Windom's name at the Brown residence, two reliable sources had said that Windom's role was to rent the house and to cut, package, and sell cocaine. Thus, as far as the sentencing was concerned, there was sufficient evidence to support the District Judge's finding that Windom was involved in a conspiracy involving at least the 762 grams of cocaine recovered in the raid on the Brown residence. The remaining charges were substantive counts, which obviously tended to corroborate Windom's continuing role in the larger drug conspiracy. Where the sentencing judge counts a large operation's entire sales, the distributors like Windom might well deserve a designation as a minor participant, but where he is only charged with what he reasonably knew about, he does not. *United States v. Willis,* 49 F.3d 1271, 1275 (7th Cir.1995). The latter is true in Windom's case.

Windom's final point was not raised until after briefing was completed and concerns the application of the Supreme Court's recent decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) to Count 7, charging a drug related gun violation. Specifically Count 7 charges Windom with a violation of 18 U.S.C. § 924(c)(1) which in relevant part imposes a prison term upon a person who "during and in relation to any ... trafficking crime ... *uses or carries* a firearm." (emphasis supplied).

■ In *Bailey,* the defendants were likewise convicted of violating 18 U.S.C. § 924(c)(1). The defendants' convictions were based on a loaded pistol found by the police inside a bag in the locked trunk of the car in which they were riding immediately before they were arrested for possession of cocaine which was found in the car's passenger compartment. There was no evidence that any defendant actively employed the firearm in any way. The Supreme Court concluded that the word "use" in Section 924(c) denoted "active employment" of a firearm by a defendant, i.e., a use that made the firearm an operative factor in relation to the predicate drug offense. Mere proximity and accessibility of the firearm to the drugs or drug proceeds were not deemed sufficient by the Court to support a conviction for "use" under the statute. The Court remanded the case to the court of appeals for a determination of whether the "carry" prong of Section 924 was a basis for upholding the conviction.

■ In his first appeal Windom questioned the sufficiency of the evidence in support of his conviction on Count 7. Although he did not renew the request for review on this appeal he is not foreclosed from reraising it now because the law of the case doctrine has an exception that allows a party to request a reconsideration on a successive

appeal where there has been an intervening change of controlling law. *United States v. Minicone,* 26 F.3d 297, 300 (2nd Cir.1994).

The indictment in this case charged Windom with the disjunctive "used or carried" and the court instructed the jury in relevant part as follows:

In order to establish the offense of using or carrying a firearm during and in relation to a drug trafficking offense as charged in [Count 7] of the indictment, the government must prove each of the following elements beyond a reasonable doubt:

* * *

Second, that the defendant during and in relation to the underlying drug trafficking offense knowingly used or carried a firearm.

* * *

As used in these instructions, the phrase "use ... of a firearm" means having a firearm available to aid or facilitate the commission of a drug trafficking offense, in this case distribution of cocaine.

In order to prove its case, the government need not establish that the defendant had actual possession of the firearm or used a firearm in an affirmative manner by displaying such firearm, either to intimidate or for protection.

While this correctly stated the law in this circuit at the time of the trial (and the first appeal) in light of *Bailey* it is no longer good law. *United States v. Abdul,* 75 F.3d 327 (7th Cir.1996); *United States v. Lamb,* 74 F.3d 751 (7th Cir.1996).

■ The government urges us to affirm the conviction on Count 7 because in its view the facts satisfy the "carry" prong of Section 924 which it claims is easily separable from the "use" prong. *See Lombardo v. United States,* 865 F.2d 155, 159 (7th Cir.1989). In *Lombardo,* this court wrestled with the problem created by the Supreme Court's decision in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Prior to *McNally,* federal courts had interpreted the mail fraud statute (18 U.S.C. § 1341) to criminalize schemes to defraud that included

deprivation of intangible rights as well as property rights. *McNally* limited the statute's coverage to those involving deprivation of property rights. Lombardo had been indicted in the conjunctive; *i.e.,* participating in schemes to defraud involving both intangible and property rights. The jury had also been instructed in the conjunctive. This court ruled therefore that the jury must necessarily have found that Lombardo had engaged in a scheme that was covered by the statute and that scheme was "easily separable" from the legally insufficient portion.

■ However, Windom was indicted and the jury was instructed in the disjunctive, not the conjunctive. Therefore, Lombardo does not save Count 7. *See Yates v. United States,* 354 U.S. 298, 311–312, 77 S.Ct. 1064, 1072–1073, 1 L.Ed.2d 1356 (1956) (Where court has no way of knowing which alternative ground the jury found, court must reverse verdict). However, Windom goes too far in his *Amended Supplemental Memorandum* at page 6 when he argues that the evidence was not sufficient to prove the "carry" prong beyond a reasonable doubt. This is important because where evidence is sufficient to prove remaining allegations beyond a reasonable doubt a case may be returned to trial court for retrial. *Yates,* 354 U.S. at 327–334, 77 S.Ct. at 1081–1085.

■ The facts in this case show that Windom was observed bent beneath the seat of his car where the gun was immediately thereafter found. A reasonable jury could conclude that the defendant had carried the weapon on his person and had attempted to secret it beneath the seat of his car immediately prior to his arrest. In fact, this is the conclusion that Windom at page 5 of his *Supplemental Memorandum* (but not his *Amended Supplemental Memorandum*) says is a reasonable interpretation: "It is far more reasonable view [as opposed to reaching for in order to draw the weapon] that the defendant was attempting to conceal both the weapon and the drugs, and not retrieve either of them...." This is the same conclusion, *i.e.* "carried" the weapon, that this court, in *United States v. Ocampo,* 890 F.2d 1363, 1371 (7th Cir.1989) under very similar facts, thought was "reasonable" for the jury. Reasonable but not compelling. The jury here was instructed that the government had

to prove less: that the weapon was "available", but not that he had possession of it.

Clearly the term "carry" requires more than being available. *Bailey* says that it should be given its ordinary meaning. Thus a person who has a weapon on his person would ordinarily be said to be carrying a weapon. For example, *Black's Law Dictionary* (6th Ed.1990) defines "carry" as:

> To bear, bear about, sustain, transport, remove, or convey. *To have or bear upon or about one's person as a watch or weapon; locomotion not being essential....* (Emphasis supplied).

*See also United States v. Hernandez,* 80 F.3d 1253 (9th Cir.1996). If a jury concludes that Windom was attempting to secret the weapon under the seat at the time of his drug arrest then it could well conclude that he had been carrying the weapon. On the other hand if it concludes that weapon had at all times been under the seat and Windom did not have the weapon on his person and was not reaching for it then it could well find that he was not carrying it at the time of his arrest. Therefore Count 7 must be remanded to the trial court for retrial.

The judgment of the district court is reversed with respect to Count 7 and remanded to the trial court for further proceedings. The judgment of the district court is in all other respects affirmed.