**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Carletos E. HARDAMON, also known as CJ, Defendant–Appellant.**

**No. 98–1511.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1999.

Decided Aug. 17, 1999.

Robert L. Garrison (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Mark W. Solock (argued), Chicago, IL, for Defendant–Appellant.

Before BAUER, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Defendant–Appellant Carletos Hardamon ("Hardamon") was charged in a second superseding indictment with three other persons on April 9, 1997, with conspiracy to distribute, and to possess with intent to distribute, cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The three other co-defendants, Joseph Trotter ("Trotter"), Charles Media ("Media"), and Theodora Overton ("Overton"), all pled guilty to conspiracy, as well as to all the other counts contained in the second superseding indictment.[1]

All three subsequently testified at Hardamon's trial on behalf of the government. After a jury found Hardamon guilty, he was sentenced to life in prison, 10 years supervised release, a $2000 fine, and a special assessment of $100. On appeal, Hardamon argues that he received ineffective assistance of counsel; and furthermore that the government engaged in prosecutorial misconduct in presenting the

---

1. As mentioned above, count one of the indictment charged all four defendants with conspiracy to distribute crack cocaine. Counts two through four charged Trotter with violations of 21 U.S.C. § 841(a)(1) (knowingly and intentionally distributing crack cocaine) on three different occasions. Count five charged Trotter and Media with the same offense but on a different date. Count six charged Overton and Media with violating 18 U.S.C. § 1956(a)(1)(A)(i) (conducting a money transfer from the proceeds of distributing crack cocaine). Counts seven through nine charged Overton with the same but on different dates. Counts ten and eleven charged Media with the same but, yet again, on different dates.

testimony of witnesses who were offered recommendations for reduced sentences; that the district court committed clear error in determining the quantity of crack attributable to Hardamon under the relevant conduct provision of the guidelines; and that the district court committed clear error in increasing his offense level by four for his leadership role in the offense. We affirm.

## I. BACKGROUND

The Alton Police Department and Drug Enforcement Agency ("DEA") conducted a joint investigation which revealed that Hardamon, Media, Overton, and Trotter were involved in the distribution of crack in the Alton, Illinois area, from approximately July through December of 1996. During the course of the conspiracy, customers would either pay cash for the crack cocaine or trade weapons, cellular phones, televisions, clothing. Additionally, customers, in exchange for crack, would allow the four conspirators mentioned above to use their vehicles to transport some of the previously mentioned items to and from Chicago.

Hardamon kept the conspiracy afloat by traveling to Alton and distributing multiounce quantities of crack to Trotter and Overton.[2] Overton would then act as Hardamon's middleperson, delivering crack to other narcotics dealers. Initially, Trotter was one of the people who used Overton as a middleperson, but after Trotter and Overton had a disagreement over drug profits, Trotter commenced dealing directly with Hardamon. Before Trotter ceased to use Overton as a middleperson, Overton had delivered 8.25 ounces of crack from Hardamon to Trotter.

After Trotter started dealing directly with Hardamon, Hardamon fronted Trotter with 15 ounces of crack for distribution in the Alton area. Hardamon directed Trotter as to the percentage of drugs that could be sold, traded or bartered for cash, clothing, or guns. Additionally, when Trotter transported guns or cash to Chicago, it was Hardamon who would reimburse Trotter for his hotel, as well as all other traveling expenses.

In addition to the narcotics Hardamon supplied Trotter with, he likewise supplied Overton with large quantities of drugs. In an interview with DEA agents, Overton stated that Hardamon had traveled to Alton in September of 1996 and given her approximately 20 ounces of crack for distribution. Additionally, in November of 1996, after Trotter began dealing directly with Hardamon, Hardamon supplied Overton with another ten ounces of crack for distribution.

On October 16, 1996, the Alton police were dispatched to Trotter's apartment in response to a report of "shots fired." The officers, upon search of Trotter's apartment with his consent, seized two large plastic bags believed to contain crack cocaine from the bedroom closet. Laboratory analysis later confirmed that the substance was 22.9 grams of crack.[3]

On December 30, 1996, a confidential informant made two controlled buys from Trotter at his apartment, the first in the morning and the second sometime in the afternoon.[4] Laboratory analysis of the two controlled buys revealed a net weight of 4.9 grams of cocaine base for the first buy and 4.6 grams of cocaine base for the second buy. The first buy constitutes Count 2 of the indictment with the second buy providing the foundation for Count 3 of the indictment.

Also on December 30, 1996, a search warrant was executed at Trotter's residence and the items seized included crack

---

2. Hardamon also distributed drugs in Waukegan, Decatur, and Danville, Illinois.

3. This transaction constitutes Count 5 of the indictment.

4. The record does not reflect the exact time of day of these controlled buys.

cocaine and a large amount of U.S. currency, including all of the prerecorded funds used during the two controlled buys. Trotter, Trent Conner, Nicholaus Lovett, and Stuart Overton[5] were taken into custody.

On January 23, 1997, a Grand Jury in the Southern District of Illinois returned a five-count indictment against Trotter. Count 1 charged that from on or about July 27, 1996, until about December 30, 1996, Trotter conspired with Media, Theodora Bell, and others both known and unknown to the Grand Jury, to distribute and possess with intent to distribute crack, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Counts 2 and 3 charged that from on or about December 30, 1996, Trotter distributed crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Counts 4 and 5 charged Trotter with possession with intent to distribute crack cocaine, also in violation of 21 U.S.C. § 841(a)(1). On February 19, 1997, the indictment was withdrawn and a superseding indictment was issued that included Media in Counts 1 and 5, and Overton in Count 1. Finally, on April 9, 1997, a second superseding indictment was returned which included Hardamon in Count 1. The remaining counts of the second superseding indictment were as follows: Counts two through four charged Trotter with violations of 21 U.S.C. § 841(a)(1) (knowingly and intentionally distributing crack cocaine) on three different occasions; Count five charged Trotter and Media with the same offense but on a different date; Count six charged Overton and Media with violating 18 U.S.C. § 1956(a)(1)(A)(i) (conducting a money transfer from the proceeds of distributing crack cocaine); Counts seven through nine also charged Overton with the same offense but on separate dates; Counts ten and eleven also charged Media with violating 18 U.S.C. § 1956(a)(1)(A)(i), and again on different dates.

On April 10, 1997, a warrant was issued for Hardamon, with his arrest taking place on May 22, 1997, in the Northern District of Illinois.[6] Trotter, Media, and Overton pled guilty to all counts charged in the indictment, and subsequently testified for the government at Hardamon's trial. We are of the opinion that the co-conspirators' testimony, various recordings, the controlled buys made by the DEA, and other circumstantial and direct evidence, all helped serve to convince the jury that Hardamon was guilty of conspiracy to distribute crack cocaine.

A Presentence Investigation Report ("PSR") was prepared for Hardamon. The PSR recommended that: 1) Hardamon be held responsible for 53.25 ounces (1.509 kilograms) of crack cocaine; 2) Hardamon's offense level should be increased by four because he was an organizer or leader of the conspiracy; 3) Hardamon should receive a two level increase for possessing a dangerous weapon during the offense, *see* U.S.S.G. § 2D1.1(b)(1); and 4) Hardamon should receive a life sentence.

Hardamon filed numerous general objections to the PSR. He also made two specific objections concerning the organizer/leader increase and the possession of a dangerous weapon increase. The trial judge overruled all the objections, and on February 25, 1998, sentenced Hardamon to a term of life imprisonment.

## II. ISSUES

On appeal, Hardamon alleges: 1) that he was denied the effective assistance of trial counsel; 2) that the government engaged in prosecutorial misconduct when it presented testimony from Media, Overton, and Trotter it had obtained after offering sentence reductions in exchange for truthful testimony at Hardamon's trial; 3) that the district court was clearly erroneous in holding Hardamon responsible for 1.509 kilograms of crack cocaine as relevant

---

**5.** The record does not reveal the relationship between Stuart and Theodora Overton.

**6.** The record does not reveal the exact location of Hardamon's arrest.

conduct; and (4) that the district court committed clear error when it increased Hardamon's offense level by four after concluding he was an organizer or leader of the conspiracy.

## III. ANALYSIS

### A. *Ineffective Assistance of Trial Counsel*

■ During oral argument, we questioned Hardamon's attorney as to whether he truly wanted to challenge the effectiveness of trial counsel in this direct appeal. We expressed our concern about his making this challenge at this time, rather than in a collateral proceeding under 28 U.S.C. § 2255. Hardamon was asking us to review a claim that usually falls short of finding support in the original trial record. *See Bond v. United States,* 1 F.3d 631, 635 (7th Cir.1993) ("a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose"); *see also Guinan v. United States,* 6 F.3d 468, 471 (7th Cir. 1993) ("Often, indeed usually, the effectiveness of a trial lawyer's performance cannot be evaluated without an evidentiary hearing at which the lawyer is asked to explain why he did not follow seemingly promising lines of defense."). It is well known that when such a claim is brought on direct appeal and rejected, future challenges to the effectiveness of trial counsel will be limited to the law of the case,[7] leaving an individual with the formidable task of convincing a judge that our previous ruling should be disregarded. *See Taglia,* 922 F.2d at 418; *Page v. United States,* 884 F.2d 300, 302 (7th Cir.1989); *United States v. Mazak,* 789 F.2d 580, 581 (7th Cir.1986). At oral argument, Hardamon took heed and withdrew his claim of ineffective assistance, thereby preserving the claim for post-conviction review.

### B. *Prosecutorial Misconduct*

■ Jumping on the proverbial bandwagon, Hardamon has joined hundreds of defendants throughout the nation and, relying on *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), *rev'd* 165 F.3d 1297 (10th Cir.) (en banc), *cert. denied,* —— U.S. ——, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999), argues that the government violated the anti-bribery statute, *see* 18 U.S.C. § 201(c)(2), by giving something of value to cooperating witnesses[8] in exchange for their testimony, and that, consequently, the cooperating witnesses should not have been allowed to testify.[9] Because Hardamon failed to timely object to the testimony of the cooperating government witnesses on the basis that the government was violating 18 U.S.C. § 201(c)(2) at trial when it presented the testimony of the three co-conspirators, we review for plain

---

7. This doctrine "is somewhat porous, since it bars a district judge from reexamining a ruling by a court of appeals unless there is some good reason" to do so, such as an intervening change in the law, or new evidence. *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir. 1991) (internal quotations and citations omitted); *see also Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir.1995) ("Although *res judicata* does not apply in § 2255 proceedings, the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings. Indeed, in the absence of changed circumstances of fact or law, [it] will not reconsider an issue which was already decided on direct appeal." (internal quotations and citation omitted)).

8. Media, Trotter, and Overton stood to gain lower sentences in exchange for their testimony.

9. Section 201(c)(2) states that
 [w]hoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom ... shall be fined under this title or imprisoned for not more than two years, or both.

error. *See United States v. Williams*, 44 F.3d 614, 618 (7th Cir.1995).

We disagree with the defendant-appellant Hardamon's contention that the trial court committed plain error in allowing the cooperating witnesses to testify. This Circuit and the others circuits that have considered the issue of whether the government violates the anti-bribery statute in situations like this have all rejected the view that the government can violate 18 U.S.C. § 201(c)(2) by immunizing witnesses or entering into cooperation agreements with them. *See United States v. Mitchell*, 178 F.3d 904, 909–10 (7th Cir. 1999); *United States v. Condon*, 170 F.3d 687, 688–89 (7th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 1784, 143 L.Ed.2d 812 (1999); *United States v. Lara*, 181 F.3d 183, 197–99 (1st Cir.1999); *United States v. Stephenson*, 183 F.3d 110 118–19 (2d Cir.1999); *United States v. Haese*, 162 F.3d 359, 366–68 (5th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1795, 143 L.Ed.2d 1022 (1999); *United States v. Ware*, 161 F.3d 414, 418–25 (6th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 1348, 143 L.Ed.2d 511 (1999); *United States v. Johnson*, 169 F.3d 1092, 1097–98 (8th Cir. 1999), *petition for cert. filed*, —— U.S.L.W. —— (U.S. June 15, 1999) (No. 98–9870); *United States v. Lowery*, 166 F.3d 1119, 1122–24 (11th Cir.1999), *petition for cert. filed*, —— U.S.L.W. —— (U.S. June 6, 1999) (No. 99–5172); *United States v. Ramsey*, 165 F.3d 980, 986–90 (D.C.Cir. 1999), *petition for cert. filed*, —— U.S.L.W. —— (U.S. June 13, 1999) (No. 99–5255). It is most interesting to note that the Tenth Circuit has reconsidered its original position in *Singleton* and now holds that the government does not violate § 201(c)(2) when it makes use of the testimony of co-defendants who have been offered sentence reductions in exchange for their truthful testimony. *See United States v. Singleton*, 165 F.3d 1297 (10th Cir.) (en banc), *cert. denied*, —— U.S. ——, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999). We see no need, nor has Hardamon offered us any convincing reasons, to reconsider the now unanimous view among the circuits that the government should not be held to have violated § 201(c)(2) in factual circumstances like the one before us in this case.

### C. *Relevant Conduct*

■ Hardamon also challenges the district court's decision to hold him responsible for 1.509 kilograms of crack cocaine. A trial court's determination of the quantity of drugs included as relevant conduct is a finding of fact that we review for clear error. *See United States v. House*, 110 F.3d 1281, 1283 (7th Cir.1997); *United States v. Windom*, 82 F.3d 742, 746 (7th Cir.1996). "This court should not find that a finding of fact is clearly erroneous unless upon review it is left 'with a definite and firm conviction that a mistake has been committed.'" *United States v. Herrera*, 54 F.3d 348, 356 (7th Cir.1995) (quoting *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989)). Under the clearly erroneous standard, "'if two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous.'" *United States v. Taylor*, 72 F.3d 533, 546 (7th Cir.1995) (quoting *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir. 1994)).

■ Hardamon, however, filed only a general objection to the PSR's recommendation that he be held accountable for the 1.509 kilograms of crack cocaine. At his sentencing hearing, he attempted to raise the issue by merely stating that the "relevant conduct … is inaccurate. I don't know where the Probation Department derived these figures." It is now axiomatic that in order "'[t]o preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection.'" *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 224, 142 L.Ed.2d 184 (1998) (quoting *United States v. Wynn*, 845 F.2d 1439, 1442

(7th Cir.1988)); *see also United States v. Laughlin*, 772 F.2d 1382, 1391–92 (7th Cir. 1985). Thus, in order to preserve an issue for appellate review, a party may not rest on a general objection to the evidence. *See Linwood*, 142 F.3d at 422. Accordingly, absent a proper, specific and timely objection, as is the case here, we will only review for plain error. *See id.; Lieberman v. Washington*, 128 F.3d 1085, 1095 (7th Cir.1997); *United States v. Whaley*, 830 F.2d 1469, 1478 (7th Cir.1987). "Under such a deferential standard, it should come as little surprise that *reversal for plain error is exercised in only the most exceptional of circumstances.*" *Lieberman*, 128 F.3d at 1095 (citing *United States v. Jackson*, 542 F.2d 403, 409 (7th Cir.1976)) (emphasis in original). This is not one of those exceptional cases.

■ Section 1B1.3(a)(1)(B) explains what can be considered relevant conduct when determining a defendant's base offense level. It states that relevant conduct is "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(B).

Hardamon argues that the district court failed to make a specific finding that the 20 grams of crack Overton claimed Hardamon supplied her with in September of 1996 were part of the conspiracy, and that the information that the judge did rely on was "inherently unreliable." The government responds that because Hardamon has failed to offer any evidence that the inclusion of the 20 grams was erroneous, the burden of proof does not shift to the government. Thus, the government contends that the district court's decision to attribute 1.509 kilograms of crack cocaine to Hardamon must be affirmed.

■ At a sentencing hearing, "the rules of evidence do not apply and the sentencing judge is free to consider a wide range of evidence including hearsay." *United States v. Edwards*, 115 F.3d 1322, 1326 (7th Cir.1997). Additionally, the Criminal Code provides that: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3577.

As we have stated before,

[t]he law is very clear that a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir.1995); *see also* 18 U.S.C. § 3661. A corollary to this general principle is the rule that a sentencing judge "may consider relevant information *without regard to the rules of evidence* ... provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 (emphasis added). As this court has explained:

The sentencing stage of a trial is one of the most important parts of the criminal process. In order for a judge to be well advised of the facts surrounding the defendant's background, and particularly in view of the judge's obligation to the general public, as well as to the defendant, to be fair, reasonable, and just, it is imperative that he be allowed to draw upon a wealth of information concerning the defendant's background, from his date of birth up to and including the moment of sentencing.... In order to render justice to all the judge must be able to impress upon a defendant through the expansive contents of an all encompassing sentencing report that we are a country of laws and not men.

*United States v. Madison*, 689 F.2d 1300, 1314 (7th Cir.1982), *cert. denied*,

459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983); *see also United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir. 1992).

*United States v. Gerstein*, 104 F.3d 973, 978 (7th Cir.1997) (emphasis and citation in original).

On appeal, Hardamon challenges the district court's decision to hold him responsible for the 20 grams of crack Overton stated that he (Hardamon) had brought to Alton for distribution. After Overton was arrested, she was interviewed by the investigating agents and gave a detailed account of her dealings with Hardamon. She stated that during 1995 and 1996, Media provided her with ¼ ounce quantities of crack which she distributed to various individuals. Overton further stated in the interview that, in July of 1996, she began supplying crack to Trotter. She went on to inform the authorities that in October of 1996, she introduced Trotter to Hardamon because Trotter wanted a new crack supplier. Overton stated that she continued to buy crack from Hardamon even after she introduced him to Trotter, and that in September of 1996, Hardamon traveled to Alton and supplied her with 20 ounces of crack for distribution.

On appeal, Hardamon attempts to characterize this 20 ounces of crack as an unreliable statement because Overton never mentioned the September transaction in other interviews. Like many defendants, Hardamon has misinterpreted, obviously to his own benefit, the requirements of the sentencing guidelines. The mere fact that Overton referred to the 20–ounce transaction only on one occasion certainly does not render the decision to attribute the crack to Hardamon unreliable. *See United States v. Vold*, 66 F.3d 915, 918 (7th Cir.1995) ("[t]he testimony of one witness ... is sufficient to support a finding of fact"); *see also United States v. Rivera*, 6 F.3d 431, 445 (7th Cir.1993). Furthermore, a trial judge may appropriately rely on information beyond the scope of the evidence produced at trial, including information contained in the defendant's presentence report and information obtained during the plea hearings of co-defendants, when imposing sentence. *Cf. Serapo v. United States*, 595 F.2d 3 (9th Cir.1979) (Sentencing judge may consider information obtained from trials of co-defendants); *United States v. Scalzo*, 716 F.2d 463, 469 (7th Cir.1983) (Reliance upon hearsay and other types of inadmissible information in assessing the factors affecting punishment is not per se improper); *United States v. Cusenza*, 749 F.2d 473, 478 (7th Cir.1984) (Sentencing judge "may properly consider hearsay evidence of other criminal activity by the defendant, in some cases even if the defendant has pleaded not guilty to related charges."). The Supreme Court has repeatedly held that "a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose ..." and "before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). The Court has further explained that "once the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." *Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959).

*United States v. Nesbitt*, 852 F.2d 1502, 1521–22 (7th Cir.1988); *see also Gerstein*,

104 F.3d at 978; *United States v. Mustread*, 42 F.3d 1097, 1101–02 (7th Cir.1994); *United States v. Morales*, 994 F.2d 386, 389 (7th Cir.1993). In any event, Hardamon does not provide this Court with any specific evidence that can support his bald assertion that the information is unreliable and may present double-counting.[10] Thus, we affirm the district court's decision to hold Hardamon responsible for the 1.509 kilograms of crack as relevant conduct.

### D. *Role in the Offense*

 Hardamon also appeals the imposition of a four level increase to his offense level pursuant to § 3B1.1(a) for his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). In concluding that Hardamon played this role in the conspiracy, the sentencing judge stated:

> [b]ased on my recollection of the evidence [Hardamon] fits the bill. He was the one who was supplying the drugs. He came down [to Alton]. He was, by nature, supplying the merchandise, so to speak. He was the organizer and the leader in the whole operation. The operation was entirely dependent upon his supplying the drugs. Without the drugs there wasn't any organization.

Hardamon does not challenge the district court's finding that the conspiracy involved five or more persons and only concedes that he had control over Trotter. Hardamon does, however, rest his appeal on the argument that he did not have sufficient control over all the members of the conspiracy, and cannot, therefore, be considered a leader or organizer of the conspiracy. We review the district court's determination as to Hardamon's role in the offense for clear error. *See United States v. Barnes*, 117 F.3d 328, 336 (7th Cir.1997).

Application Note 4 under U.S.S.G. § 3B1.1 lists several factors that a court may consider when determining whether a particular individual is an organizer or leader of a conspiracy, including:

> ... the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Exemplifying his leadership role, it was Hardamon who was one of the principal sources, along with Media, of crack cocaine in the conspiracy, and he frequently transported crack cocaine to the Alton, Illinois area for distribution. In addition to being a major source of the drugs, the PSR noted that Hardamon was viewed as a leader or organizer by other members of the conspiracy. Notably, it was Hardamon who received the greatest share of the profits, and he routinely directed co-conspirators with regard to what percentage of drugs could be sold, traded, or bartered for things other than money. Also exemplifying his leadership role, Hardamon would frequently front Overton and Trotter with drugs, and he also reimbursed Trotter for all his traveling expenses to and from Chicago, including hotel bills. Finally, it was Hardamon who resolved the dispute between Overton and Trotter.

Hardamon's argument that the district court committed clear error because he did not control all the members of the conspiracy misses the point behind § 3B1.1. As we have stated before " '[s]ection 3B1.1 does not require that [a defendant] knew of or exercised control over all of the participants.' " *United States v. Kamoga*, 177 F.3d 617, 621 (7th Cir.1999) (quoting *United States v. Dota*, 33 F.3d 1179, 1189 (9th Cir.1994)); *see also United States v. Evans*, 92 F.3d 540, 545 (7th Cir.1996)

---

**10.** We note that the PSR called its estimate of 1.509 kilograms "conservative" and refused to include 25 ounces of crack because of a concern with double counting.

("[t]he fact that fewer than five [of the other participants] actually reported to [the defendant] is immaterial."). Instead, § 3B1.1 is designed to assess relative responsibility for the crime. *See Kamoga,* 177 F.3d at 621 ("Control is probative, but it is not the decisive factor . . . ."); *see also United States v. Emerson,* 128 F.3d 557, 562 (7th Cir.1997); *Mustread,* 42 F.3d at 1104; *United States v. Skinner,* 986 F.2d 1091, 1097 (7th Cir.1993).

Hardamon clearly qualifies as an organizer or leader of the conspiracy. In addition to his concession that he had control over Trotter, Hardamon was one of the main drug suppliers to the conspiracy and fronted drugs to members of the conspiracy on more than one occasion. He would direct members as to what drugs could be sold, traded, or bartered for things other than money, and resolved a dispute between two members of the conspiracy. Finally, it was Hardamon who received a greater share of the profits, and reimbursed Trotter for his traveling expenses. With this information in the record, we refuse to hold that the district court committed clear error in determining that Hardamon was a leader or organizer. *See United States v. Magana,* 118 F.3d 1173, 1202–04 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998) (organizer/leader enhancement was warranted in light of testimony that the coconspirators received direction from the defendant, and the defendant's failure to contradict relevant findings in the PSR); *Barnes,* 117 F.3d at 337 (In order for the organizer/leader enhancement to be warranted the defendant must have exercised some degree of control over the coconspirators or he must have been responsible for organizing others for the purpose of carrying out the offense.).

## IV. CONCLUSION

As noted above, Hardamon has withdrawn his ineffective assistance of trial counsel claim, thereby preserving it for review under § 2255. Accordingly, we

need not discuss this claim. Furthermore, based on the now unanimous view of the circuits that have considered this issue, we are of the opinion that the government did not engage in prosecutorial misconduct when using the testimony of Overton, Media, or Trotter. Because the district court committed no error in determining Hardamon's relevant conduct or role in the offense, Hardamon's conviction and sentence are

AFFIRMED.